IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JURATE ANTIOCO, | No. C 13-00924 SI |
| Plaintiff, | **ORDER RE SUMMARY JUDGMENT** |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Now before the Court are the parties' cross motions for summary judgment. These motions are scheduled to be heard on July 11, 2014. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. For the reasons below, the Court hereby GRANTS the government's motion for summary judgment, and DENIES plaintiff's motion for summary judgment.

**BACKGROUND**

This matter comes before the Court with a complicated procedural background. In March, 2007, plaintiff Jurate Antioco purchased a small apartment building in San Francisco for $1.9 million. Declaration of Steven Walker in Support of Plaintiff's Motion for Summary Judgment Ex. A, at 3. She financed the purchase with a $950,000 bank loan, and her share of the profit earned when she and her ex-husband sold a property in 2006. *Id.* Plaintiff lived in one unit of the building,

her elderly mother lived in another, and plaintiff rented out the remaining three units. *Id.* at 3-4.

In August, 2008, plaintiff filed her 2006 and 2007 tax returns, but did not pay tax for the gain she realized from the 2006 property sale. *Id.* at 4. In April, 2009, plaintiff received a notice of intent to levy her property to pay the taxes she owed. *Id.* Plaintiff asked for a collection due process ("CDP") hearing, and proposed an installment plan. *Id.* at 4-5. Plaintiff contacted lenders in an attempt to refinance her loan on the San Francisco property, but was unable to secure financing. *Id.* at 5. In September, 2009, plaintiff's first CDP hearing went forward, and the Appeals officer informed plaintiff that she would have to try to borrow against the equity in her property before the IRS would consider an installment plan. *Id.* at 6. Several weeks later, plaintiff was able to refinance her loan by adding her mother to the deed, as a joint tenant. *Id.* at 6-7. In November, 2009, plaintiff received a notice of determination sustaining the proposed levy. *Id.* at 7. Plaintiff appealed. *Id.* The Tax Court granted plaintiff's motion and remanded the case to Appeals. *Id.*

Appeals officer Alan Owyang handled the case on remand. *Id.* at 8. Mr. Owyang called plaintiff to schedule a hearing. *Id.* Plaintiff told him that she would call him back when she had all of her documents together, but Mr. Owyang called her several times that day, and at one point told her she was being uncooperative, and to "put [her] money where [her] mouth is." *Id.* Mr. Owyang followed up these calls with a letter several days later in which he stated his preliminary determination that plaintiff could pay her taxes, but chose not to. *Id.* The letter also asked plaintiff to submit several documents. *Id.* Plaintiff's attorney submitted the documents and scheduled a CDP hearing with Mr. Owyang for April, 2011.

At the CDP hearing, Mr. Owyang stated that he would not consider an installment agreement because plaintiff could have fully paid her tax liability, but had given up her equity in the property by adding her mother to the deed as a joint tenant. *Id.* at 9. Mr. Owyang also refused to consider plaintiff's hardship argument. *Id.* Before issuing a notice of determination, Mr. Owyang attempted – apparently unsuccessfully – to secure a lien on plaintiff's property. *Id.* at 9-10. In May, 2011, Mr. Owyang issued his supplemental notice of determination, sustaining the proposed levy. In the notice, Mr. Owyang stated that he could not consider an installment plan because, although there was over $900,000 of equity in plaintiff's property, she had fraudulently transferred ownership to her mother. *Id.* at 10. He

further opined that plaintiff was "non-compliant" and a "won't pay taxpayer" who was using her elderly mother "as an emotional diversion." *Id.*

Plaintiff again appealed the determination. *Id.* The Tax Court found that Mr. Owyang had abused his discretion and again remanded the case. *Id.* at 26. In June, 2013, a new Appeals officer issued a supplemental notice of determination granting plaintiff an installment plan. Declaration of Cynthia Stier in Support of Motion for Summary Judgment ("Stier Decl.") Ex. 19.

On February 28, 2013 plaintiff filed suit in this Court, seeking damages under 26 U.S.C. § 7433, for alleged violations of 26 U.S.C. §§ 6304 (Fair Tax Collection Practices); 6330(b) (Right to Fair Hearing); 6330(c)(3)(B) (Failure to Consider Challenges to Appropriateness of Collection Actions); and 6343(a)(1)(D) (Release of Levy on Personal Residence).

Both parties now move for summary judgment.

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 324). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

3

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(2).

**DISCUSSION**

Plaintiff moves for summary judgment, arguing that the uncontested facts demonstrate that she is entitled to judgment as a matter of law. The government also moves for summary judgment, arguing that the Court lacks jurisdiction to hear the case; and that, even if the Court had jurisdiction, plaintiff has failed to establish that she is entitled to judgment as a matter of law.

The United States is immune from suit absent a congressional waiver of sovereign immunity. *See Block v. North Dakota*, 461 U.S. 273, 287 (1983) ("The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress."). In the absence of a waiver, a federal court lacks jurisdiction to hear the suit. A waiver of sovereign immunity should be strictly construed, and any doubts or ambiguities should be resolved in favor of sovereign immunity. *See Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied. Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign.") (internal citations omitted)).

Plaintiff's complaint contains a single cause of action: a claim for civil damages pursuant to 26 U.S.C. § 7433. Section 7433 provides, in relevant part:

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

4

Courts have interpreted § 7433 narrowly, restricting the waiver of sovereign immunity to only those actions specifically related to the collection of taxes. *See Miller v. United States*, 66 F.3d 220, 223 (9th Cir. 1995) (affirming district court's grant of summary judgment for lack of jurisdiction where plaintiff challenged actions in connection with the determination of tax, not its collection); *Shaw v. United States*, 20 F.3d 182, 184 (5th Cir. 1994) (stating that "§ 7433 is limited to reckless or intentional disregard in connection with the collection of taxes. An action under this provision may not be based on alleged reckless or intentional disregard in connection with the determination of tax") (internal quotations omitted)); *Gonsalves v. IRS*, 975 F.2d 13, 16 (1st Cir. 1992) (holding that plaintiff's claim based on the government's refusal to give him a tax refund could not be pursued under § 7433); *Cole v. United States*, No. 1:02-CV-137, 2002 WL 31495841, at *4 (W.D. Mich. Oct. 21, 2002) ("Neither a [CDP] hearing nor a Notice of Levy is a collection action implicating the remedies available under § 7433. Rather, both are predicates to action and together may result in a decision by the IRS not to take any collection action.").

Plaintiff has failed to demonstrate that any of Mr. Owyang's alleged violations were in connection with the collection of taxes, pursuant to § 7433. Plaintiff alleges that Mr. Owyang violated: (1) § 6403 because he abused and harassed her throughout the time that he handled her case; (2) § 6330(b) because his abusive tactics denied her the right to a fair CDP hearing; (3) § 6330(c)(3)(B) because he failed to consider plaintiff's argument that her circumstances warranted granting her an installment plan; and (4) § 6343(a)(1)(D) because he failed to consider plaintiff's hardship arguments regarding levying her property. Compl. ¶¶ 27-36. However, all the evidence adduced in support of plaintiff's claims indicates that these events did not take place in connection with the collection of tax, as § 7433 requires. All of Mr. Owyang's alleged wrongdoing took place prior, or in relation to, plaintiff's CDP hearing. They were, therefore, actions taken during the determination or assessment of plaintiff's taxes, not during their collection. *See Miller*, 66 F.3d at 223; *Cole*, 2002 WL 31495841, at *4. Indeed, the government never collected taxes pursuant to Mr. Owyang's assessment; instead, plaintiff sought, and was granted, a second appeal which ultimately resulted in her successful application for an installment plan. *See* Stier Decl. Ex. 19. Therefore, plaintiff cannot rely on the

limited waiver of sovereign immunity embodied in § 7433.  The Court lacks subject matter jurisdiction to hear this case, and therefore GRANTS the government's motion for summary judgment.[1]

## CONCLUSION

For the foregoing reasons and for good cause shown, and on the basis of the record before it, the Court hereby GRANTS the government's motion for summary judgment, and DENIES plaintiff's motion for summary judgment.  This Order resolves Docket Nos. 28, 40, and 43.

**IT IS SO ORDERED.**

Dated: July 7, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE

---

[1] The Court notes that there remains pending before it the government's motion for leave to amend its answer to add a counterclaim. Dkt. No. 28. Because the Court has granted the government's motion for summary judgment, thus terminating the case, that motion is DENIED AS MOOT.